UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
)
BAPTIST MEMORIAL HOSPITAL, )
d/b/a BAPTIST MEMORIAL )
HOSPITAL-MEMPHIS )
)
        Plaintiff, )
) Civil Action No. 07-cv-2245 (RCL)
  v. )
)
KATHLEEN SEBELIUS,[1] Secretary, )
U.S. Department of Health and Human )
Services, )
)
        Defendant. )
_____)

## MEMORANDUM OPINION

Before the Court is plaintiff's Motion [18] for Summary Judgment and defendant's Motion [22] for Summary Judgment. Upon consideration of the summary judgment motions, the memoranda in support thereof, the entire record, and the applicable law, the Court will DENY plaintiff's Motion for Summary Judgment and GRANT defendant's Motion for Summary Judgment. The Court's reasoning is set forth below.

### I. BACKGROUND

In this action, plaintiff Baptist Memorial Hospital-Memphis (Baptist-Memphis) seeks review of a final decision by the Secretary of Health and Human Services. In that decision, the Secretary denied as untimely Baptist-Memphis's request for an exception to the routine cost limit applicable to certain costs claimed in its cost report for Fiscal Year Ending September 30, 1995.

### A. Statutory and Regulatory Background

---

[1] This action was originally filed against Michael Leavitt in his official capacity as Secretary of the Department of Health and Human Services. Kathleen Sebelius, Mr. Leavitt's successor as Secretary, has been substituted here as defendant. *See* Fed. R. Civ. P. 25(d).

1

This action arises under Title XVIII of the Social Security Act, also known as the Medicare statute. *See* 42 U.S.C. §§ 1395–1395ggg. Relevant to this case is Part A of the Medicare statute, which authorizes payment to hospitals and skilled nursing facilities (SNFs). Part A services are furnished by providers that have entered into a "provider agreement" with the Secretary. *Id.* §§ 1395x(u), 1395cc. The Secretary is responsible for determining reimbursement amounts and for issuing regulations defining reimbursable costs. *Thomas Jefferson Univ. v. Shalala*, 512 U.S. 504, 506–07 (1994) (citing 42 U.S.C. § 1395x(v)(1)(A)).

Hospitals eligible for Part A payments submit annual cost reports containing reimbursement claims to a designated fiscal intermediary, who processes claims on behalf of the Secretary. On the basis of a hospital's cost report, the intermediary makes a final determination known as a Notice of Program Reimbursement (NPR) regarding the amount the hospital should be reimbursed for services rendered during the reporting period. 42 C.F.R. § 405.1803. If a provider is dissatisfied with the intermediary's determination, it may request a hearing before the Provider Reimbursement Review Board (PRRB). 42 U.S.C. § 1395oo(a). In order to qualify for PRRB review, the provider must submit its hearing request within 180 days of the NPR, among other jurisdictional requirements. *Id.* The request must "identify the aspects of the determination with which the provider is dissatisfied, explain why the provider believes the determination is incorrect in such particulars, and be accompanied by any documenting evidence the provider considers necessary to support its position." 42 C.F.R. § 405.1841(a)(1). If the PRRB holds a hearing, its decision is subject to review by the Secretary's delegate, the Administrator of the Centers for Medicare and Medicaid Services (CMS). 42 U.S.C. § 1395oo(f)(1).

Regulations also permit an intermediary to reopen an otherwise final cost report determination to make limited corrections. *See* 42 C.F.R. § 405.1885. A final determination

"may be reopened with respect to findings on matters at issue" on the motion of either a provider or an intermediary, provided that the reopening request is made within three years of the initial NPR. *Id.* § 405.1885(a). Once a cost report determination is reopened, a provider may appeal the "separate and distinct" results of the reopening, including any adjustments made in the revised NPR. *Id.* § 405.1889.

"Reasonable costs" reimbursable under the Medicare statute exclude any costs that are "unnecessary in the efficient delivery of needed health services." 42 U.S.C. § 1395x(v)(1)(A). Congress has authorized the Secretary to establish limits on reasonable costs "based on estimates of the costs necessary in the efficient delivery of needed health services." *Id.* Such limits establish the maximum reimbursement to which a provider is typically entitled. Congress has also given the Secretary discretion to grant exceptions to cost limits as needed. *See* S. Rep. No. 92-1230, at 187–89 (1972).

The Secretary's cost limit regulation, 42 C.F.R. § 413.30, includes provisions for exceptions. The limits, known as routine cost limits (RCLs), are derived from several factors (i.e., the type of services furnished, the geographic area where services are furnished, the size of the institution, and the nature and mix of services furnished and patients treated). *See* 39 Fed. Reg. 20,165 (June 6, 1974). RCLs may also be adjusted upward to reflect added costs flowing from the delivery of "atypical services." *Id.*; 42 C.F.R. § 413.30(e). As is relevant to this case, the Secretary has the discretion to authorize exceptions to the RCL for SNFs like Baptist-Memphis. 42 U.S.C. § 1395yy(c). The Secretary's cost limit regulation places a time limit on exception requests, requiring a provider to submit any request "to its fiscal intermediary within 180 days of the date on the intermediary's notice of program reimbursement." 42 C.F.R. § 413.30(c).

3

### B. Factual and Procedural Background

During the time period relevant to this case, plaintiff Baptist-Memphis was owned and operated by Baptist Memorial Healthcare Corporation (BMHCC). As a Medicare participant, Baptist-Memphis filed a cost report containing reimbursement claims for Fiscal Year Ending September 30, 1995 (FYE 1995). A.R. 1614. Baptist-Memphis claimed, among other things, SNF costs. *Id.* Part of its reported costs, including the SNF costs, were "home office costs" that BMHCC had provided to Baptist-Memphis. *Id.* at 339. The home office of a chain of healthcare providers (here, BMHCC) cannot directly receive Medicare reimbursement, 42 U.S.C. § 1395cc, but the services it preforms for provider subsidiaries are treated as "obtained from [the provider] itself." 42 C.F.R. § 413.17(c)(2). To receive reimbursement for such services, the home office must file a cost statement identifying allowable costs and how costs are allocated among provider subsidiaries. The intermediary can adjust the allocation of home office costs as necessary, which may affect the total amount of an individual provider's allowable costs.

On September 21, 1998, Baptist-Memphis's Intermediary issued an NPR for FYE 1995. A.R. 8, 1383–87, 1612–14, 1665–66, 1854–62, 1879–83. The NPR used FYE 1994 home office costs because the Intermediary had not yet finalized BMHCC's FYE 1995 home office cost statement. *Id.* at 339, 342–43, 378. Baptist-Memphis and the Intermediary thus knew that the Intermediary would later reopen the FYE 1995 cost report to correct home office costs. *Id.* at 342–43, 345, 378.

The NPR indicated that Baptist-Memphis's claimed SNF costs substantially exceeded the applicable RCL. *Id.* at 23, 472 (noting that the "routine cost per diem was substantially over the RCL"), 1599 (observing that SNF costs "exceeded the RCL limitation by approximately $1.2

4

million dollars"). Baptist-Memphis did not, however, request an exception to the RCL within 180 days of the NPR. *Id.* at 8, 23; Plaintiff's Motion for Summary Judgment (Pl.'s SJM) at 6.

On September 27, 2000, Baptist-Memphis received notice that its FYE 1995 cost report would be revised to implement the results of the Intermediary's review of BMHCC's FYE 1995 home office cost statement. A.R. 8, 1388–1480. On August 7, 2001, the Intermediary issued a Notice of Reopening of Baptist-Memphis's FYE 1995 cost report "to adjust [the] allowable home office cost." *Id.* at 1482. On November 6, 2001, the Intermediary issued a revised NPR for FYE 1995 that incorporated adjustments to the home office cost statement. *Id.* at 8. Specifically, the revised NPR reduced the allocation of home office costs to three areas, including the SNF. *Id.* at 9, 973. SNF costs were reduced by $27,488—thus reducing the amount of SNF costs that exceeded the RCL. *Id.* at 9, 258–59, 472, 1491. In other words, the revised NPR did not apply the RCL to new SNF costs. Nor did it alter the RCL that had been applied in the initial NPR or address the issue of atypical services.

On May 6, 2002—within 180 days of the date of the *revised* NPR—Baptist-Memphis filed a request for an RCL exception for SNF costs based on the provision of atypical services. *See id.* at 1509–29. The Intermediary denied Baptist-Memphis's exception request as untimely because it was filed more than 180 days from the date of the initial NPR. *See id.* at 1531–33. Baptist-Memphis appealed the denial of its exception request to the PRRB. *See id.* at 1535–39. The PRRB decided in favor of Baptist-Memphis, concluding that "a provider should be allowed to make an exception request for the full amount from any NPR in which the RCL is at issue," that "there is no basis to limit a provider's exception request from a revised NPR," and thus that Baptist-Memphis "properly file[d] its exception request for the full amount from the revised NPR." *Id.* at 253–54.

5

On October 29, 2007, CMS reversed the PRRB's decision. *See id.* at 2–21. Interpreting the cost limit exception regulation, 42 C.F.R. § 413.30(c), in light of the reopening regulations, *id.* §§ 405.1885 and 405.1889, CMS found that—just as "the Medicare regulations limit the scope of administrative review of revised NPRs to matters the fiscal intermediary reconsidered in revising the NPR"—they also establish that an exception request made pursuant to a revised NPR is "limited to those items and costs at issue in the revised NPR." A.R. 6–9. Accordingly, CMS held that a "revised NPR does not give a provider new appeal rights for *costs that could have been appealed under the original NPR*" and that an SNF cannot obtain "relief from *costs that exceed the RCL which are not affected by the revision of the NPR*." *Id.* at 9 (emphasis added). CMS found that Baptist-Memphis, rather than "exercis[ing] its right to request an exception within the required 180 days of the original NPR" for costs that exceeded the RCL, improperly requested an exception from the revised NPR. *Id.* Noting that the revised NPR had *reduced* the amount of SNF costs that exceeded the RCL, and that Baptist-Memphis had no right to an exception for costs that were "not affected by the revision of the NPR," CMS denied Baptist-Memphis's exception request for FYE 1995. *Id.* That decision constitutes the Secretary's final decision at issue in this case.

## II. DISCUSSION

### A. Standard of Review

Review of the Secretary's decisions is governed by 42 U.S.C. § 1395oo(f)(1), which incorporates the Administrative Procedure Act (APA), 5 U.S.C. § 706. Accordingly, a court may set aside final agency action only when it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" or "unsupported by substantial evidence." 5 U.S.C. § 706(2)(A),(E). Under both the "arbitrary and capricious" and "substantial evidence" standards,

the scope of review is narrow and a court must not substitute its judgment for that of the agency. *Motor Veh. Mfrs. Ass'n v. State Farm Mutual Ins. Co.*, 462 U.S. 29, 43 (1983); *Gen. Teamsters Local Union No. 174 v. Nat'l Labor Relations Bd.*, 723 F.2d 966, 971 (D.C. Cir. 1983). As long as an agency has "examined the relevant data and articulated a satisfactory explanation for its action including a rational connection between the facts found and the choice made," a reviewing court will not disturb the agency's action. *MD Pharm., Inc. v. Drug Enforcement Admin.*, 133 F.3d 8, 16 (D.C. Cir. 1998). The burden of showing that an agency's action violates the APA falls on the provider. *Diplomat Lakewood Inc. v. Harris*, 613 F.2d 1009, 1018 (D.C. Cir. 1979).

To the extent that the Secretary's decision is based on the language of the Medicare statute, the Court owes *Chevron* deference. *Marymount Hosp., Inc. v. Shalala*, 19 F.3d 658, 661 (D.C. Cir. 1994). The Court must defer to the Secretary's interpretation "whenever it is a permissible construction of the statute." *HCA Health Servs. of Oklahoma v. Shalala*, 27 F.3d 614, 617 (D.C. Cir. 1994). Similarly, the Secretary's interpretation of her own regulations is entitled to substantial deference. *Thomas Jefferson Univ.*, 512 U.S. at 512. The Court must give the Secretary's interpretation "controlling weight" unless it is "plainly erroneous or inconsistent with the regulation." *Id.* (citations omitted). "[B]road deference is all the more warranted when, as here, the regulation concerns 'a complex and highly technical regulatory program,' in which the identification and classification of relevant 'criteria necessarily requires significant expertise and entail the exercise of judgment grounded in policy concerns.'" *Id.* (quoting *Pauley v. BethEnergy Mines, Inc.*, 501 U.S. 680, 697 (1991)).

### B. Analysis

Baptist-Memphis contends that the Secretary denied its SNF RCL exception request on the basis of requirements that cannot be found in the cost limit regulation, 42 C.F.R. § 413.30(c).

Baptist-Memphis argues that the Secretary's decision was contrary to the plain language of her regulations and was therefore arbitrary and capricious.

### 1. *The Secretary's interpretation of 42 C.F.R. § 413.30(c) is reasonable and entitled to substantial deference.*

At the outset, the Court notes that Baptist-Memphis misinterprets the decision at issue in this case, arguing that it "prohibits providers from obtaining an SNF RCL exception from revised NPRs." Pl.'s SJM at 11. The Secretary's decision neither announced nor applied such a rule. As noted above, the Secretary held that a "revised NPR does not give a provider new appeal rights for *costs that could have been appealed under the original NPR*" and that an SNF cannot obtain "relief from *costs that exceed the RCL which are not affected by the revision of the NPR.*" A.R. 9 (emphasis added). Under this interpretation, a provider *can* request an exception within 180 days of a revised NPR provided that the costs that exceeded the RCL (1) could not have been appealed under the initial NPR and (2) were in fact affected by the revision of the NPR. In other words, the Secretary has interpreted § 413.30(c) to require RCL exception requests to be filed within 180 days of an initial NPR, *or* within 180 days of a revised NPR *provided that* the basis for exception relief is addressed in the revised NPR and is not a matter as to which the provider had an opportunity to seek exception relief pursuant to the initial NPR.

The Court finds this interpretation reasonable. Under § 413.30(c), a provider must make an RCL exception request "within 180 days of the date on the intermediary's notice of program reimbursement." On its face, § 413.30(c) does not address RCL exception requests that follow the reopening and revision of an NPR. As there is no conflict between the Secretary's interpretation and the regulation's plain language, the interpretation is entitled to substantial deference. *See Thomas Jefferson Univ.*, 512 U.S. at 512. Indeed, the Court has previously

recognized the Secretary's interpretation as reasonable. *See St. Anthony's Health Ctr. v. Leavitt*, 579 F. Supp. 2d 115, 120 (D.D.C. 2008) (Urbina, J.) (upholding the Secretary's decision that the plaintiff was not entitled to exception relief pursuant to a revised NPR for costs that could have been appealed under the initial NPR).

Furthermore, the Secretary reasonably interpreted § 413.30(c) in light of her reopening regulations. As noted above, § 405.1885 limits reopenings to "findings on matters at issue" in an initial NPR. Additionally, § 405.1889(b)(1) limits appeals of a revised NPR to "[o]nly those matters that are *specifically revised in a revised determination*." On the basis of these regulations, this Circuit has held that the PRRB's review of a reopened reimbursement decision is limited to the specific issues revisited on reopening. *HCA Health Servs.*, 27 F.3d at 620 ("[W]e do not think it impermissible for the Secretary to interpret the 'intermediary determination' on reopening as limited to the particular matters revisited on the second go-round."). Here, it was reasonable for the Secretary to apply this "issue-specific" approach to require that an exception request made pursuant to a revised NPR be limited to costs affected by the revised NPR. *See St. Anthony's Health Ctr.*, 579 F. Supp. 2d at 120 (finding that the Secretary reasonably denied an exception request where the plaintiff sought reimbursement for costs that could have been appealed under the initial NPR). As the Secretary argues, the limited reopening and revision of an NPR should not restart the time within which a provider may seek exception relief regarding matters that were finalized in the initial NPR. *See* Def.'s SJM at 27–28.

### 2. *The Secretary's decision is supported by substantial evidence*.

The Court finds that substantial evidence in the record supports the Secretary's decision in this case. Baptist-Memphis's Intermediary issued an initial NPR for FYE 1995 on September 21, 1998. A.R. 8, 1383–87, 1612–14, 1665–66, 1854–62, 1879–83. The initial NPR indicated

that Baptist-Memphis's claimed SNF costs substantially exceeded the applicable RCL. *Id.* at 23. Baptist-Memphis did not, however, request exception relief within 180 days of the initial NPR. Rather, the record indicates that Baptist-Memphis requested an SNF RCL exception on the basis of atypical services on May 6, 2002—nearly four years after the expiration of the 180-day period following the initial NPR. *See id.* at 1509–29.

The record further indicates that the Intermediary reopened the FYE 1995 cost report solely to implement the results of a review of BMHCC's home office cost statement. *See id.* at 8, 1388–1480, 1482–89. The Intermediary then issued a revised NPR that did nothing more than incorporate the revisions to that statement. As a result of the reopening, *fewer* SNF costs were above and therefore subject to the RCL. Thus, the revised NPR did not apply the RCL to new SNF costs. Nor did it alter the RCL that had been applied in the initial NPR. Moreover, atypical services—the basis of Baptist-Memphis's exception request—were not at issue on reopening. The record thus establishes that Baptist-Memphis's request sought reimbursement for SNF costs that could have been appealed under the initial NPR.

The Court is not persuaded by Baptist-Memphis's argument that, had it made its request pursuant to the initial NPR, it could have faced False Claims Act liability by "knowingly submitt[ing] an improperly inflated exception request based on inaccurate home office costs that were subsequently lowered in the revised NPR." Pl.'s SJM at 19. Had Baptist-Memphis filed a request based on the initial NPR and a good-faith estimate of allowable costs, it would not have risked False Claims Act liability—which attaches only when a person "knowingly" presents a false claim for payment. *See* 31 U.S.C. § 3729(a)(1)(A). Baptist-Memphis could then have filed a modified request to reflect the revised NPR's adjusted home office costs. In any event, there is no evidence in the record that Baptist-Memphis failed to timely file an exception request

10

pursuant to the initial NPR due to concerns about False Claims Act liability. *See* A.R. 345 (testimony of Paul Trower, witness for Baptist-Memphis, that he did not know "why the hospital did not file an exception request from the original NPR"), 347 (testimony of Paul Trower that he was not aware of any records explaining why Baptist-Memphis had failed to request exception relief pursuant to the initial NPR). Nor is there evidence that the Intermediary encouraged Baptist-Memphis not to file an exception request pursuant to the initial NPR. *See id.* at 376.

As the Court found above, Baptist-Memphis could have requested exception relief pursuant to the initial NPR. The SNF costs for which it sought an RCL exception were not affected by the revised NPR. Accordingly, having found that the Secretary's issue-specific interpretation of 42 C.F.R. § 413.30(c) is reasonable, the Court finds that the Secretary properly applied that interpretation to deny Baptist-Memphis's exception request as untimely.

### III. CONCLUSION

For the reasons stated herein, plaintiff's Motion [18] for Summary Judgment will be DENIED and defendant's Motion [22] for Summary Judgment will be GRANTED.

A separate order consistent with this memorandum opinion shall issue this date.

Signed by Royce C. Lamberth, Chief Judge, on March 11, 2011.